UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A.M. SIFUNA,<br><br>      Plaintiff,<br><br>   v.<br><br>ACCREDITATION COUNCIL OF PHARMACY EDUCATION, et al.,<br><br>      Defendants. | No. 17 CV 0028<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

After failing a course and being dismissed from the South College School of Pharmacy, plaintiff A.M. Sifuna filed this action against the Accreditation Council of Pharmacy Education; ACPE's Director of Accreditation, Gregory Boyer; a student at South College School of Pharmacy, Michael Dotson; and several employees of South College School of Pharmacy, Walter Fitzgerald, Gamal Hussein, Kerri Freeman, Michael O'Neil, Kellie Goza, and Karen Owens. Both the ACPE defendants and the South College defendants filed motions to dismiss. For the following reasons, both motions are granted.

**I.    Legal Standards**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). If a defendant makes a facial challenge to the sufficiency of the allegations regarding subject-matter jurisdiction,

the court accepts all well-pleaded factual allegations as true and it draws all reasonable inferences in favor of the plaintiff. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If, however, the defendant makes a factual challenge, by denying or controverting the truth of the jurisdictional allegations, the court may look beyond the pleadings and view any evidence submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *Id.*

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The party asserting jurisdiction has the burden of proof. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Where, as here, a court determines a Rule 12(b)(2) motion based on the submission of written materials and without holding an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010); *GCIU–Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Even though courts resolve all factual disputes in the plaintiff's favor, courts accept as true all unrefuted facts in the defendants' declarations or affidavits. *GCIU–Employer Ret. Fund*, 565 F.3d at 1020 n.1. Accordingly, when defendants challenge a fact alleged in the plaintiff's complaint with a sworn statement, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found. v. Sanofi–Sythelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Fed. R. Civ. P. 12(b)(6). The court accepts all factual allegations as true and it draws all reasonable inferences in the plaintiff's favor, but it need not accept legal conclusions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The complaint must not only provide the defendant with fair notice of a claim's basis but also, it must be facially plausible. *Id. at* 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Courts hold *pro se* complaints, like this one, to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Under this standard, a *pro s*e complaint "may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). However, the court "is not to become an advocate" for the *pro se* plaintiff, *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); and the complaint still must be "otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).

II.    Facts

In June 2011, Sifuna moved to Knoxville, Tennessee, to attend South College School of Pharmacy. [1] ¶¶ 13–14.[1] During her time at South College, Sifuna

---

[1] Bracketed numbers refer to entries on the district court docket.

3

encountered a number of obstacles. Her complaint describes her experiences there, including: the impeachment of the class president, how she narrowly escaped punishment for failing to adhere to the lab coat and scrubs policy, complaints from students and faculty about her behavior, delayed disbursement of her stipend, her missed homework assignment due to severe weather, threats from O'Neil to not submit negative reviews, and being held captive by an instructor who used half of the class time to play rap music. *See, e.g., id.* ¶¶ 19–41.

There are also several references in the complaint to Sifuna's race or national origin. *See, e.g., id.* ¶ 22 (while looking at Sifuna, Fitzgerald said: "We should be very grateful for the technology that South College is offering because students in Africa were performing Laboratory work in huts."); *id.* ¶ 23 (Sifuna "was forced to give an interview about her nation of origin to the College's marketing firm and was told it was part of being a team player."); *id.* ¶ 32 (Fitzgerald told Sifuna that "coming from where you come from, you should be grateful that we have given you an opportunity."); *id.* ¶ 42 (Sifuna was forced out of a study room "so that a white student who had arrived late to study for her finals too could use it."); *id.* ¶ 75 ("Plaintiff was treated in a disparate fashion based on her race, nation of origin and gender"); *id.* ¶ 106 (there were only four black students, and Sifuna was the only student originally from Africa; Freeman wanted to punish a minority student by awarding a punitive grade).

The crux of the complaint, it seems, concerns Sifuna's Introductory Pharmacy Practice Experiences rotation. *Id.* ¶ 45. Sifuna says she got lost on the way to her

fourth IPPE rotation, which ultimately led to her failing the course. *Id.* ¶¶ 45–46. At a meeting, Fitzgerald, Freeman, and Hussein informed Sifuna that she was academically dismissed from South College, but that she should appeal her failing grade in the IPPE course.[2] *Id.* ¶¶ 52, 92. Sifuna appealed the grade, but she received a denial. *Id.* ¶ 53. Sifuna was advised to file an appeal to be readmitted to the school, but "[a]n opportunity to file a real appeal was denied," as was access to an attorney, the ability to record the proceedings, or to bring witnesses.[3] *Id.* ¶¶ 53–55. She tried to pursue other avenues to resolve the situation, but she was unsuccessful. *Id.* ¶ 56.

Eventually, Sifuna wrote to ACPE to complain about South College's decision to refuse to allow her to retake the IPPE course, as they had promised at the beginning of the quarter and as the school's handbook required. *Id.* ¶ 61. ACPE responded to Sifuna and explained that it would explore her complaint but that "ACPE has no authority to overturn any school action, only to ensure that the school's policies and procedures were appropriately followed." *Id.* at 74. Additionally, ACPE advised Sifuna that even if it found that South College failed to follow its policies or procedures, that all ACPE could do is require the school to reevaluate the matter, and that the outcome could stay the same because "[a]cademic performance decisions rest with the program, not with ACPE." *Id.*

---

[2] Sifuna says that when she was dismissed, she had a 3.14 GPA and that she was twelve months away from graduating. [1] ¶ 73.

[3] The complaint also states that "[a] day or two to the second hearing for college readmission," Hussein sent her a "list of fabricated misconducts," which prompted Sifuna to contact the vice president of South College. *Id.* ¶ 54. When no one contacted her, Sifuna wrote to the president and vice president of South College, asking them to intervene. *Id.*

5

Sifuna asked ACPE if she could provide evidence to support her complaint several times, but ACPE did not acknowledge her request. *Id.* ¶ 63. Two years later, ACPE provided Sifuna with a link through which to submit evidence; after Sifuna attempted to use this link to submit evidence, ACPE responded that her case was old and would not be reopened. *Id.* ¶ 67. Even when Sifuna found "more evidence" to support her case against South College, ACPE would not accept it because the new evidence did not add anything new to Sifuna's case. *Id.* ¶ 68. Sifuna complained to the Department of Education about ACPE's failure to properly investigate her complaint. *Id.* ¶ 64.

Sifuna's seven-count complaint in this action is difficult to decipher, but this much is clear: Count I is against Fitzgerald, ACPE, and Boyer for "intentional negligence and violation of federal law." *Id.* at 18. Sifuna's theory is that by failing to properly investigate her complaint, ACPE failed in its obligation to ensure that the programs it accredits comply with their policies and procedures. Count II is against Fitzgerald and ACPE for "misrepresentation." *Id.* at 34. Sifuna's theory is that Fitzgerald touted the qualifications of a school accredited by ACPE, but those features were not available when Sifuna began school there; Hussein misrepresented facts to the hearing committee about Freeman offering Sifuna an incomplete grade and an opportunity to change that grade to a pass; and Goza misled Sifuna and her preceptors about when to attend the IPPE course. Count III is against Fitzgerald, Hussein, Freeman, and ACPE for "retaliation." *Id.* at 45. Sifuna's theory was that Fitzgerald retaliated against her for refusing to speak with

ACPE on behalf of South College's pre-candidacy application; Hussein retaliated against her because she discovered that he violated the accreditation requirements; Freeman retaliated against her because she felt wronged by Sifuna; and ACPE retaliated against her for filing complaints against it. Count IV is against Fitzgerald, Hussein, Freeman, and ACPE for "violation of due process." *Id.* at 48. Sifuna's theory is that Fitzgerald, Hussein, and Freeman illegally awarded her a failing grade and ignored proper procedures, and that ACPE failed to follow its policies and procedures. Count V is against Fitzgerald, Goza, Hussein, Freeman, O'Neil, ACPE, and Boyer for "discrimination." Sifuna's theory is that Fitzgerald and another professor bullied her persistently to create a discriminatory environment, and that ACPE required her to reveal her name in her complaint even though ACPE never required white complainants to reveal their names. Count VI is against Fitzgerald, Goza, Hussein, Freeman, Dotson, and ACPE for "defamation."[4] *Id.* at 51. Sifuna's theory is that defendants defamed her by portraying her as a violent person who is not fit for the pharmacy profession, and that Fitzgerald, Hussein, and Freeman falsely claimed that she did not show up for an appeal hearing, which led to the confirmation of her academic dismissal. Count VII is against all defendants for "intentional infliction of distress." *Id.* at 54. Sifuna's theory is that defendants caused her immense suffering and mental anguish, which led to bouts of

---

[4] The complaint refers to this as "Count V," but since it is the second "Count V" to appear in the complaint, I assume it is a typographical error. I will refer to this count as "Count VI," and the next count as "Count VII."

7

unemployment and homelessness, and it caused her to have panic attacks and to contemplate suicide, among other things.

## III. Analysis

The ACPE defendants move to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1), (6). The South College defendants move to dismiss the complaint for lack of subject-matter jurisdiction and for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(1)–(2).

### A. Subject-Matter Jurisdiction

The complaint invokes both diversity and federal question jurisdiction over this action. [1] ¶ 12. Defendants challenge both grounds for jurisdiction. Diversity jurisdiction exists only when there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). There is complete diversity when none of the parties on either side of the litigation is a citizen of the same state of which a party on the other side is a citizen. *Howell by Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 217 (7th Cir. 1997). Since the complaint states that Sifuna, ACPE, and Boyer are citizens of the state of Illinois, [1] ¶¶ 1–3, defendants argue that complete diversity between the parties is lacking.[5] In response, Sifuna "partly concedes" that complete diversity does not exist between her, ACPE, and Boyer, but she reiterates that she seeks over $75,000, exclusive of

---

[5] Corporations are citizens of both its state of incorporation and the state in which its principal place of business is located. 28 U.S.C. § 1332(c); *Illinois Bell Tel. Co., Inc. v. Glob. NAPS Illinois, Inc.*, 551 F.3d 587, 590 (7th Cir. 2008).

8

interests, which should confer jurisdiction. [27] at 1–2. But, both elements are required. Without complete diversity, diversity jurisdiction does not exist and the question of whether the plaintiff has sufficiently alleged the amount in controversy becomes irrelevant. Sifuna has failed to establish diversity jurisdiction under § 1332.

Federal question jurisdiction exists when the civil action arises under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The complaint appears to advance several bases for federal question jurisdiction: defendants violated her constitutional due process rights under the Fourteenth Amendment; the Higher Education Act and its implementing regulations; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*; 42 U.S.C. § 1981; her First Amendment rights; and the Whistleblower Protection Act, 5 U.S.C. § 1221(a).[6]

As the First and Fourteenth Amendments clearly "arise under" the United States Constitution, this court has subject-matter jurisdiction over Sifuna's claims that defendants violated her First Amendment and due process rights.[7] *See* 28

---

[6] It is not clear from the complaint that Sifuna was alleging each of these claims. Construing this *pro se* complaint liberally, I note the following: (1) the complaint has many allegations that reference discrimination on the basis of Sifuna's race or national origin, and she labels Count V as "Discrimination," without any statutory citations, so I will consider those allegations in reference to a potential claim under Title VI or § 1981; and (2) her response brief includes the following subheading: "Retaliations (Violation of 1st Amendments & Whistleblower)," *see* [27] at 7, so I will construe her retaliation allegations as claims under the First Amendment and the Whistleblower Protection Act.

[7] Defendants argue that these claims must be dismissed under Rule 12(b)(1) because there is no state action; those arguments are well taken, but they are not jurisdictional. Although the Seventh Circuit has held that claims against private actors brought under 42 U.S.C. § 1983 were properly dismissed under Rule 12(b)(1) because such claims are frivolous and frivolous claims cannot "engage federal jurisdiction," *Piscopo v. State Farm Ins.*, 527 Fed. App'x 552, 554 (7th Cir. 2013), defendants' arguments in this action were akin to saying

U.S.C. § 1331. Similarly, Title VI, § 1981, and the Whistleblower Protection Act "arise under" the laws of the United States. To the extent that Sifuna's allegations relate to defendants discriminating against her on the basis of her race or national origin, in violation of Title VI or § 1981, or retaliating against her in violation of the Whistleblower Protection Act, she has established federal question jurisdiction for such claims. *See* 28 U.S.C. § 1331.

The HEA and its implementing regulations, however, do not provide a jurisdictional basis for her lawsuit. While Sifuna is correct in saying that ACPE must follow federal laws, including the regulation she referenced in her complaint, [1] ¶ 77 (citing 34 C.F.R. § 602.23(c)),[8] neither the HEA nor its implementing regulation, § 602.23, supply a cause of action for violations of their provisions, either expressly or impliedly. *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006) ("nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions.") (collecting cases); *see also Graham v. Sec. Sav. & Loan*, 125 F.R.D. 687, 693 (N.D. Ind. 1989), *aff'd sub nom. Veal v. First Am. Sav. Bank*, 914 F.2d 909 (7th Cir. 1990).

---

that Sifuna failed to establish an element of a § 1983 claim. Those are merits-based arguments and I treat them as such. *See Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.").

[8] The Department of Education promulgated § 602.23 pursuant to its authority under the Higher Education Act of 1965. *See* 20 U.S.C. § 1099b.

Sifuna insists that this court should find jurisdiction here because one court found a private right of action in the HEA. [27] at 7 (citing *De Jesus Chavez v. LTV Aerospace Corp.*, 412 F.Supp. 4 (N.D. Tex. 1976)). The *De Jesus* case is an outlier and other courts have rightly criticized it. *Gibbs v. SLM Corp.*, 336 F.Supp.2d 1, 15 (D. Mass. 2004), *aff'd*, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005); *Robinett v. Delgado Cmty. Coll.*, No. CIV. A. 99-2545, 2000 WL 798407, at *3 n.4 (E.D. La. June 19, 2000); *Moy v. Adelphi Inst., Inc.*, 866 F.Supp. 696, 704 (E.D.N.Y. 1994). More importantly, the *De Jesus* case "predates the Supreme Court's ruling in *Touche Ross & Co. v. Redington*, which requires some affirmative evidence of congressional intent to create a private right of action, and not just a lack of congressional intent to deny a cause of action." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1224 (11th Cir. 2002) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979)). Without evidence of such congressional intent with the HEA, and in light of the considerable amount of persuasive authority, I conclude that the HEA does not provide a private right of action. Consequently, Sifuna cannot establish federal question jurisdiction by pointing to the HEA or § 602.23; that claim is dismissed.

### B. Personal Jurisdiction

The South College defendants move to dismiss this action for lack of personal jurisdiction because there is no reason for them to anticipate being haled into federal court in Illinois based on their interactions with Sifuna. Under the Due Process Clause of the Fourteenth Amendment, a district court may exercise

personal jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Neither the plaintiff nor third parties can create the requisite contacts in the forum state, *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014); the defendant must have deliberately established these contacts with the forum state, "'such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction over a defendant can be established through general or specific jurisdiction. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017), *reh'g and suggestion for reh'g en banc denied* (Nov. 14, 2017). General jurisdiction requires a defendant's contacts with the forum state to be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction requires a defendant's contacts with the forum state to be directly related to the conduct at issue in the complaint. *Id.* That a defendant's conduct affects a plaintiff who has connections to the forum state does not establish specific jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), *as corrected* (May 12, 2014). The focus remains on "the relationship among the defendant, the forum, and the

litigation." *Walden*, 134 S.Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

Sifuna argues that defendants' actions hurt her while she was in Illinois and that they "must have known" that such actions would give her a reason to file suit against them in federal court in Illinois.[9] [27] at 1. Fitzgerald, as Dean of the School of Pharmacy, "submit[ted] their business" to a centralized application service, PharmCAS, to solicit applications from potential pharmacy school candidates, including candidates who lived in Illinois.[10] *Id.* at 8. The other South College defendants, Sifuna says, harmed her while she was in Illinois by denying her the opportunity to have her student loans considered for forgiveness and for denying her a real investigation into her complaints of unjust treatment and other procedural failures. *Id.* As such, Sifuna asserts that all of the South College defendants should have anticipated being subject to suit in Illinois.

I disagree. The complaint does not allege that Goza, Hussein, Freeman, O'Neil, or Dotson had any contacts with the state of Illinois, and their declarations describe very limited contacts with Illinois. *See* [16-1]—[16-6]. As for Fitzgerald, the complaint alleges that he had limited and indirect contacts with Illinois stemming from some emails he sent on behalf of the School of Pharmacy. Fitzgerald exchanged a few emails with Boyer in response to ACPE's inquiries about the

---

[9] As Fitzgerald points out, though, when Sifuna applied to South College, her permanent address was in Kenosha, Wisconsin; and throughout her tenure at South College, she never gave any indication that she was a resident of Illinois. [16-1] ¶ 3.

[10] Although Sifuna references the PharmCAS email in her response brief, there are no allegations about that email in the complaint; much less any allegations establishing that Fitzgerald wrote the email and that he targeted Illinois residents in so doing.

13

procedures through which South College handled Sifuna's grade challenge. *See* [16-1] ¶¶ 10–12. He also received an email from an administrator at the Chicago State University School of Pharmacy, confirming the receipt of a letter that "appeared to have been prepared and sent by [Fitzgerald] on South College letterhead" in support of Sifuna's application to that school; Fitzgerald responded via email to clarify that he had not authored or sent any such letter. *Id.* at ¶ 13. These are not the types of "continuous and systematic" contacts that confer general jurisdiction, *see Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846–47 (7th Cir. 2002), nor are they contacts that would be sufficient to confer specific jurisdiction over Fitzgerald because they do not show that he targeted Illinois in any way by responding to such emails. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 800–803. Being sued in Illinois would not have been foreseeable to Fitzgerald, based on these contacts. Exercising personal jurisdiction over Fitzgerald and any of the other South College defendants does not comport with traditional notions of fair play and substantial justice.[11] Their motion to dismiss is granted as to the issue of personal jurisdiction.

## C. Federal Claims

Only the ACPE defendants remain. Sifuna may only assert the following federal claims against them here: violations of the due process clause under the Fourteenth Amendment, Title VI, § 1981, the First Amendment, and the Whistleblower Protection Act.

---

[11] I need not address the parties' arguments about Illinois's fiduciary shield doctrine because that doctrine is only triggered when personal jurisdiction exists.

To state a claim for violations of the due process clause under the Fourteenth Amendment, there must be state action. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). Sifuna argues that defendants may be held liable for violating her due process rights because the ACPE defendants, by accrediting pharmacy schools, "perform a public function," and the "performance of a 'public function' is a state action." [27] at 5–6. Sifuna cites *Shelley v. Kraemer*, 334 U.S. 1 (1948) for this proposition. But, in *Shelley*, the Supreme Court held that courts could not enforce racial covenants on real estate under the Equal Protection Clause of the Fourteenth Amendment. *Shelley* is inapposite and it does not support Sifuna's argument. That the ACPE defendants perform a public function, in the eyes of Sifuna, is not enough to state a claim for violations of due process—ACPE does not invoke or rely on the power of the state to enforce its accreditation procedures.

Sifuna next suggests that there is state action because of "excessive entanglement" between ACPE and the state. [27] at 6 (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)). In *Brentwood*, the Supreme Court explained that it treats a "nominally private entity" as a state actor when that entity is either controlled by an agency of the state, when the state delegates a public function to the entity, or when the entity is "'entwined with governmental policies,' or when government is 'entwined in [its] management or control.'" *Id.* at 296 (citation omitted). To support her theory, Sifuna says that the federal government has given ACPE a monopoly "in determining access by

15

Pharmacy schools to Federal Student Loans, and to students enrolled in pharmacy schools," and as a result, "ACPE is required to follow certain Federal Laws in its duties." [1] ¶ 12.

The ACPE defendants submit a declaration from the Executive Director of ACPE, who explains that ACPE is an independent, not-for-profit corporation that accredits programs in pharmacy. [20-1] ¶ 7. ACPE does not have sole control over access to Federal Student Loans; "[a]ny corporation that desires to become a recognized accreditation organization may do so by following the provisions established by the Department of Education." *Id.* ¶ 8. Additionally, only Title IV gatekeepers may establish eligibility to participate in the Federal Student Assistance Program, and ACPE is not a Title IV gatekeeper.[12] *Id.* Sifuna does not refute ACPE's point here, nor does her complaint plausibly allege ACPE's entanglement with the state. The requisite "pervasive entwinement" with the state under *Brentwood* is not present here; Sifuna has failed to state a due process claim under the Fourteenth Amendment. *See also Hu v. Am. Bar Ass'n*, 334 Fed. App'x. 17, 19 (7th Cir. 2009) ("[T]he ABA is not a state actor because the Supreme Court of Illinois, not the ABA, decides whether graduation from an ABA-accredited school is necessary to practice law in Illinois."). The ACPE defendants' motion to dismiss Sifuna's due process claim is granted.

---

[12] The U.S. Department of Education provides a list of agencies that it designates as Title IV gatekeepers. Those agencies, "whose accreditation enables the institutions they accredit to establish eligibility to participate in the Federal Student Assistant Program." *See Accreditation in the United States*, U.S. Department of Education, https://www2.ed.gov/admins/finaid/accred/accreditation_pg10.html (last visited Nov. 28, 2017).

16

Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in the administration of federally funded programs. 42 U.S.C. § 2000d, *et seq*. In order to bring a private action under Title VI, "the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980). Sifuna does not allege that she is an intended beneficiary of any federally funded program in which ACPE participates; therefore there is no Title VI claim against the ACPE defendants apparent in the complaint. *Id.* at 1235–1236.

Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws." 42 U.S.C. § 1981(a). Per the express statutory language, in order to bring a § 1981 claim, there must be a contract. *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). Sifuna does not allege that she had any contract with the ACPE defendants. Moreover, she does not allege the requisite intentional discrimination on the part of the ACPE defendants. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n.16 (1984). The allegations of racial and national origin discrimination are directed at the South College defendants, and the allegation that ACPE required Sifuna to provide her name (but allowed white complainants to be anonymous) does not plausibly suggest intentional discrimination in its accreditation procedures or in any contract with Sifuna.[13] She has not stated a claim under § 1981.

---

[13] A Title VI claim would also require an allegation of intentional discrimination that is lacking here.

Sifuna's First Amendment and Whistleblower Protection Act claims fail, too. Her First Amendment claim cannot prevail because only a state actor can violate a plaintiff's First Amendment rights, *Fairley v. Andrews*, 578 F.3d 518, 524 (7th Cir. 2009), and the ACPE defendants are not state actors. Her Whistleblower Protection Act claim fails because an individual remedy for retaliation under that statute is only available for "an employee, former employee, or applicant for employment" of the United States. *See* 5 U.S.C. §§ 1221(a), 2105(a). Sifuna was not employed by or seeking employment from the United States, and therefore she is not covered by the act.

Ordinarily, leave to amend the complaint should be freely given. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a presumption in favor of giving plaintiffs at least one opportunity to amend the complaint). But there are no plausible federal theories of liability against the ACPE defendants based on Sifuna's troubles at South College. ACPE is a non-state actor; it is a private accreditation organization with no contract with Sifuna. It would be futile to amend the complaint.

### D. State Claims

This court had original and personal jurisdiction over Sifuna's federal claims against the ACPE defendants, but since those claims have now been dismissed under Rule 12(b)(6), I decline to exercise supplemental jurisdiction over any state law claims alleged in the complaint. 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP*

*Prod. N. Am. Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). Sifuna's state-law claims against the ACPE defendants are dismissed without prejudice.

## IV. Conclusion

Defendants' motions to dismiss, [15] and [19], are granted. The complaint is dismissed without prejudice in part for lack of subject-matter jurisdiction. The complaint is dismissed as to the South College defendants without prejudice for lack of personal jurisdiction; the federal claims against the ACPE defendants are dismissed with prejudice for failure to state a claim. The state-law claims against the ACPE defendants are dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: November 28, 2017